# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00473-CR

**David Andrew Mendez, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NO. 975373, HONORABLE BOB PERKINS, JUDGE PRESIDING**

Appellant David Andrew Mendez was convicted of capital murder. *See* Tex. Pen. Code Ann. § 19.03(a)(7)(A) (West 1994). Because the State did not seek the death penalty, appellant was sentenced to life imprisonment. Appellant asserts that he was denied his constitutional right to be confronted with the witnesses against him and that the evidence is insufficient to support his conviction. We will reverse and remand.

## BACKGROUND

On October 1, 1997, Francisco Vasquez and George Rodriguez were shot and killed in the Vasquez family home's garage, which had been converted into a bedroom. The next-door neighbor heard several shots and then saw two men run from the house and escape in a gray Blazer-type vehicle. Another neighbor heard gunshots and looked toward the house; she heard a car start and saw a light-colored, sport-utility vehicle drive past her at a rapid speed. She later identified

appellant as the driver of the vehicle. Based on this and other information, the police went to appellant's apartment and asked appellant and three of his friends—Saul Isaac Flores, John Frizzell, and Joel Gonzales—to come to the station for questioning. Appellant was questioned and released, as were Frizzell and Gonzales. However, during questioning, Flores gave police a statement confessing to participation in the murders and implicating appellant as the primary actor in the murders. Appellant was subsequently arrested and indicted for capital murder.

At appellant's trial, the State introduced several witnesses. Both neighbors testified to what they saw and heard on the day of the murders. A police officer testified that appellant's gray Blazer was found hidden in another part of the city. Gonzales, who lived with appellant, testified that appellant had been angry with the victims because they had stolen money and drugs from him. Gonzales also testified that on the day of the crime, appellant and Flores were nervous when they returned home and seemed particularly interested in a television news account of the murders.

The State called Flores as a witness. Despite an offer of use immunity, he refused to testify and was held in contempt of court. The State then offered Flores's written confession into evidence. Appellant objected to the confession as inadmissible hearsay. The court overruled the objection and expressed an intent to admit the confession as an exception to the hearsay rule. Again appellant objected, arguing that introduction of the confession would violate his right to confront the witnesses against him under the Sixth Amendment of the United States Constitution, article I, section 10 of the Texas Constitution, and article 1.05 of the Texas Code of Criminal Procedure. The court overruled appellant's objection finding that Flores's statement was self-inculpatory and thus admissible as a "statement against penal interest" under Rule 803 of the Texas Rules of Evidence. *See* Tex. R. Evid. 803(24). Flores's confession reads, in part:

2

DAVID SELLS COCAINE FOR A LIVING. I DON'T SELL FOR DAVID BUT I GO AND PARTY WITH HIM. I DO COCAINE AND SMOKE WEED. ON OCTOBER 1ST I SPENT THE NIGHT DAVIDS. WE WENT TO BED ABOUT 4 OR 5AM. I GOT UP WHEN DAVID WOKE ME UP, I DON'T KNOW WHAT TIME IT WAS, THE SUN WAS COMING UP, IT WAS MORNING TIME.

DAVID ASKED ME IF I WOULD GIVE HIM A RIDE SOMEWHERE. DAVID HAD TWO BOXES, CARDBOARD WITH THE STYROFOAM CUTS OUT, GUN BOXES. THE GUNS WERE STILL IN THE BOXES. WHEN YOU OPENED THE BOX THERE WAS A CLIP IN THE GUN AND A LOADED CLIP. WE WENT IN HIS BLAZER, A GREY PRIMER BLAZER, I THINK IT'S A GMC. I DROVE DAVID SAID LET'S GO TO FRANKS. WHEN WE GOT TO FRANKS THERE WAS A BROWN TRUCK. HE TOLD ME TO TAKE THE BLOCK. WHEN WE CAME BACK THE TRUCK WAS THERE BUT WE STOPPED ANYWAY. WHEN WE GOT TO FRANKS HOUSE HE GAVE ME A BOX AND TOLD ME TO HOLD THIS. I KNEW IT WAS A GUN. I KNEW THE GUN WAS AN AUTOMATIC NOT A REVOLVER. HE SAID, COME ON STAND BY THE DOOR, COME UP HERE.

WE WALKED UP TO THE FRONT DOOR. I WALKED IN THE HOUSE IN THE FRONT ROOM. DAVID PEEPED OUT THE HOUSE, CHECKED IT OUT. HE WALKED TO THE GARAGE DOOR AND I HEARD "WHAT THE FUCK". I THEN HEARD SHOOTING, TAT TAT AND I RAN IN THE GARAGE AND POINTED MY WEAPON. FRANK WAS ON THE BED BUT ROLLING OFF ON TO THE FLOOR. HE WAS TURNING AWAY FROM US. FRANK WAS THE FIRST ONE THAT SET UP, HE HAD BEEN ASLEEP AND HE SAT UP AND THEN STARTED TO TURN. WHEN I RAN IN I FIRED MY GUN ABOUT THREE TIME. I AM RIGHT HANDED BUT I WAS SHOOTING WITH MY LEFT HAND. WHEN I WENT IN I WAS HOLDING THE GUN WITH BOTH HANDS AND I COVERED THE ROOM. I FIRED POSSIBLY THREE TIMES.

GEORGE WAS LAYING ON THE FLOOR. HE WAS LIKE AT AN ANGLE SLEEPING ON THE FLOOR.

AS I RAN OUT THE SIDE DOOR OF THE GARAGE I HEARD A NEIGHBOR SAY, "DID YOU HEAR GUN SHOTS." I RAN TO THE BLAZER AND JUMPED IN THE PASSENGER SIDE. I WAS IN FRONT OF DAVID. HE RAN TO THE DRIVERS SEAT AND DROVE OFF.

DAVID SAID WHAT DO WE DO, WHERE DO WE GO. I SAID GO HOME. I LEFT MY GUN IN THE BOX IN THE BACK SEAT. AS WE WERE DRIVING BACK TO THE APARTMENT I WAS LIKE IN A DAZE. I WAS STONED WHEN I WENT BUT THAT SOBERED ME UP.

DAVID TOLD ME THAT HE WAS GOING TO GET THE TRUCK PAINTED BLUE. I DON'T KNOW WHERE THE TRUCK IS, AND I DON'T KNOW WHERE THE GUNS ARE. THE LAST PLACE I SAW THE GUNS WAS IN THE BLAZER. WHEN WE GOT HOME I WALKED IN THE HOUSE AND WENT TO SLEEP. I TOLD JOHN WHAT HAPPENED. HE ASKED WHAT THE FUCK HAPPENED, WHY YOU LIKE THAT. I TOLD JOHN WE FUCKED UP DUDE. WHEN THE NEWS CAME ON HE LOOKED AT ME LIKE "GOD DAMN".

. . .

DAVID WANT TO KILL FRANK AND GEORGE BECAUSE THEY JACKED HIM, I THINK HE WANTED FRANK MORE. THEY WENT UP IN HIS HOUSE AND TOOK HIS SHIT. IT WAS ESTIMATED THAT THEY TOOK ABOUT 3,000.00 IN CASH AND DOPE. FRANK AND GEORGE HAD BEEN OVER THERE BEFORE. DAVID WAS NOT THERE WHEN IT HAPPENED AND JOEL TOLD DAVID THAT IT WAS FRANK AND GEORGE. . . .

DAVID KEEPS HIS CLOSET DOOR LOCKED 24-7. HE KEEPS THE DOOR LOCKED BECAUSE THAT IS PROBABLY WHERE HE KEEPS HIS SHIT. HE DOES NOT LET ANYONE IN THE ROOM WHEN HE CUTS HIS SHIT UP. I HAVE SEEN THE CLOSET DOOR OPEN BUT HE WOULD NOT LET ME IN.

Unquestionably, Flores's confession is hearsay, which is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Hearsay is inadmissible unless it qualifies for an exception authorized by statute or the Rules of Evidence.[1] The State notes that Rule 803 permits the admission of hearsay evidence that subjects the declarant to criminal liability. Tex. R. Evid. 803(24).[2] Flores's confession exposed him to criminal liability for the deaths of Vasquez and

---

[1] "Hearsay is not admissible except as provided by statute or these rules or by other rules prescribed pursuant to statutory authority. Inadmissible hearsay admitted without objection shall not be denied probative value merely because it is hearsay." Tex. R. Evid. 802.

[2] The Rule states as follows:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

Rodriguez. The State argues that it was therefore admissible at trial *against appellant*. Appellant contends that the admission of Flores's confession violated his right to confront the witnesses against him under the Sixth Amendment of the United States Constitution.[3] The State rejoins, accurately, that the Confrontation Clause is not an absolute bar to the admission of hearsay. The Confrontation Clause is also subject to exceptions. *See Lilly v. Virginia*, 527 U.S. 116, 125-26 (1999) (stating that framers of U.S. Constitution intended to respect rules of evidence and did not intend to exclude highly reliable hearsay, for example, dying declarations). The State asserts that because Flores's confession qualifies as a declaration against penal interest under Rule 803(24), admitting it into evidence does not violate of appellant's Sixth Amendment rights.

**DISCUSSION**

The Confrontation Clause of the Sixth Amendment to the United States Constitution states, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The original objective of the provision was to

---

. . . .

(24) Statement Against Interest. A statement which . . . so far tended to subject the declarant to . . . criminal liability . . . that a reasonable person in declarant's position would not have made the statement unless believing it to be true. In criminal cases, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Tex. R. Evid. 803(24).

[3] At trial, appellant also challenged admission of the statement as a violation of his rights under article I, section 10 of the Texas Constitution and article 1.05 of the Texas Code of Criminal Procedure. However, on appeal appellant asserts only a violation of his rights under the Sixth Amendment.

prevent the use of ex parte affidavits against criminal defendants without producing the affiants—a practice common in 16th- and 17th-century England.[4] *Lilly*, 527 U.S. at 124. Thus, we compel the live testimony of witnesses in order to ensure the reliability of the evidence by testing it in an adversarial proceeding before the jury. *Id*. at 123-24. Courtroom procedures provide several safeguards: (1) the witness is required to testify under oath and risk penalties for perjury if he lies; (2) the defendant can challenge the witness's veracity, memory, motivation, and accuracy through cross-examination; and (3) the jury is able to observe the demeanor and assess the credibility of the witness. *See California v. Green*, 399 U.S. 149, 158 (1970). However, absolute enforcement of the Confrontation Clause would eliminate every hearsay exception and thus prohibit any admission of hearsay—a result rejected by the United States Supreme Court as unintended and extreme. *Ohio v. Roberts*, 448 U.S. 56, 63 (1980). Although the Confrontation Clause expresses a preference for face-to-face confrontation at trial, out-of-court statements are sometimes admitted in the interests of fairness and accuracy. *See id*. at 63-64.

The out-of-court statement "against penal interest" is one of the many exceptions to the hearsay rule. The United States Supreme Court has identified three uses of statements against penal interest. *Lilly*, 527 U.S. at 127. The most recent use of the exception, and the one at issue in

---

[4] For example, Sir Walter Raleigh was convicted of treason based on the out-of-court confession of Lord Cobham, an alleged co-conspirator. *Lilly v. Virginia*, 527 U.S. 116, 141 (1999) (Breyer, J., concurring). When Raleigh asked that his accuser face him, he was rebuffed: "The law presumes, a man will not accuse himself to accuse another." *Id*. at 142 (quoting *Trial of Sir Walter Raleigh*, 2 How. St. Tr. 19 (1816)).

this case, is the out-of-court statement offered in evidence by the prosecution to show the guilt of a criminal defendant who is not the declarant. *Id*. at 130-31.[5]

**The Declaration Against Penal Interest**

The hearsay exception for declarations against penal interest is governed by Rule 803(24) of the Texas Rules of Evidence. Tex. R. Evid. 803(24). There are two requirements that must be met in order for hearsay to be admissible under this exception: (1) the statement must tend to expose the declarant to criminal liability, and (2) corroborating circumstances must "clearly indicate the trustworthiness of the statement." *Davis v. State*, 872 S.W.2d 743, 747-48 (Tex. Crim. App. 1994). The Texas Court of Criminal Appeals has had several occasions to explicate the 803(24) exception; however, none of the cases involve the admissibility of a confession given during custodial interrogation. *See Guidry v. State*, 9 S.W.3d 133 (Tex. Crim. App. 1999); *Dewberry v. State*, 4 S.W.3d 735 (Tex. Crim. App. 1999)*; Cofield v. State*, 891 S.W.2d 952 (Tex Crim. App. 1994). Instead, these cases all involve spontaneous utterances, not confessions. *See Guidry*, 9 S.W.3d at 147-48; *Dewberry*, 4 S.W.3d at 748-50; *Cofield*, 891 S.W.2d at 953-54. All but one involve statements made to independent third parties not engaged in law enforcement. *See Guidry*, 9 S.W.3d at 147-48*; Dewberry*, 4 S.W.3d at 748-50; *but see Cofield*, 891 S.W.2d at 953-54. Thus, while the

---

[5] Although *Lilly* is a plurality opinion with four concurrences, the Court was unanimous in its judgment that the admission of a declarant's "untested" custodial statement was a violation of the defendant's rights under the Confrontation Clause. *Lilly*, 527 U.S. at 139-40. The declarant admitted participation in a two-day crime spree, but alleged that the defendant instigated a car-jacking and shot the car's owner. The declarant invoked the Fifth Amendment and refused to testify at the defendant's trial. Over the defendant's objection, the trial court admitted a statement the declarant had made to the police after his arrest under the "against penal interest" exception. The Supreme Court of Virginia affirmed the defendant's convictions, including one for capital murder. The United States Supreme Court unanimously reversed and remanded for a determination of whether the unconstitutional admission of the statement was harmless beyond a reasonable doubt. *Id*. at 140.

court has established guidelines for admissibility under the Rule, no case is squarely in point with the one before us.

In *Cofield*, the court of criminal appeals examined the admission of testimony by a Texas Department of Public Safety trooper. 891 S.W.2d at 953-54. The defendant was in the driver's seat and the declarant was in the passenger's seat of a car parked at a dead-end road. The DPS officer testified that they appeared to be stuffing something under their seats. A copper pipe and pistol were found on the defendant's side of the car. Drug paraphernalia was found on the console between the seats and under the declarant's seat. A rock of cocaine was found in the declarant's pocket. Over defendant's objection, the trial court admitted testimony in which the DPS trooper recounted a spontaneous statement made by the declarant at the time of arrest indicating that she *and the defendant* had been smoking cocaine shortly before the troopers arrived. The defendant was convicted of possession of cocaine and sentenced to twenty-five years' imprisonment; the court of appeals reversed.

On petition for review, the court of criminal appeals noted that its focus was on "verifying to the greatest possible extent the trustworthiness of the statement so as to avoid the admissibility of a fabrication." *Id*. at 955 (citation omitted). The court concluded that statements that were not sufficiently self-inculpatory were inadmissible, even if contained within a larger document that was, in the main, self-incriminating. *Id*. at 956 (citing *Williamson v. U.S.*, 512 U.S. 594, 599-601 (1994), in which the Supreme Court had arrived at the same conclusion). The majority

of the court found persuasive this analysis of the same exception under the Federal Rules of

Evidence:[6]

> "The fact that a person is making a broadly self-inculpatory confession does not make
> more credible the confession's non-self-inculpatory parts[,]" and that "[o]ne of the
> most effective ways to lie is to mix falsehood with truth, especially truth that seems
> particularly persuasive because of its self-inculpatory nature." However, it did add
> that "[e]ven the confessions of arrested accomplices may be admissible if they are
> truly self-inculpatory, rather than merely attempt[ing] to shift blame or curry favor."

*Id*. (quoting *Williamson*, 512 U.S. at 599-603) (citation omitted). As the court of criminal appeals

observed, a broadly self-inculpatory hearsay confession may be calculated to demonize another

individual to secure a strategic advantage for the declarant. *See id*.

> "[A] codefendant's confession is presumptively unreliable as to the passages detailing
> the defendant's conduct or culpability because those passages may well be the product
> of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or
> divert attention to another." *Lee v. Illinois*, 476 U.S. 530, 545, 106 S. Ct. 2056,
> 2064, 90 L. Ed. 2d 514, 529 (1986).

*Id*. Under the facts presented in *Cofield*, the court of criminal appeals held that the declarant's

spontaneous statement given to a law enforcement officer, even though it exposed her to criminal

liability, was not admissible against the defendant on trial. *Id*. at 957 (affirming judgment of court

of appeals). The court noted that there was no corroborating evidence to indicate that the statement

was "clearly trustworthy" in its assertion that the *defendant* smoked cocaine. *Id*. at 955. The

declarant was so situated—the cocaine was in her pocket—that she alone may have committed the

---

[6] The federal rule considered by the United States Supreme Court in *Williamson* is very
similar to Rule 803(24) of the Texas Rules of Evidence. *Cofield v. State*, 891 S.W.2d 952, 956 (Tex.
Crim. App. 1994).

crime. *Id.* The declarant's statement to an arresting officer could have been calculated to curry favor, shift or spread the blame, or divert attention away from her own culpability. *Id.*

In *Dewberry*, the declarant had bragged to friends about a robbery and murder that he and the defendant had committed. 4 S.W.3d at 750. The declarant did not testify at the defendant's trial, but the state called witnesses to recount the declarant's out-of-court statements about the crime. Over the defendant's objections, the trial court admitted the testimony under Rule 803(24), and the defendant was convicted of capital murder. In its opinion affirming the conviction, the court of criminal appeals first determined that the statements were self-inculpatory in that the witnesses recounted *only* spontaneous statements in which the declarant referred to "we," inculpating both himself and the defendant for capital murder. *Id.* at 751. Second, the court examined the evidence in detail for corroborating circumstances "sufficiently convincing to clearly indicate the trustworthiness of the statement." *Id.* The salient facts proving trustworthiness were that (1) the evidence showed the declarant and defendant acted in concert throughout commission of the murder; (2) the declarant and defendant were seen together before and after the murder; (3) the declarant made the statements before he or defendant became suspects in the murder; (4) the majority of declarant's statements were made *spontaneously* or in response to casual inquiries; (5) the statements were made to friends and acquaintances not connected to commission of the crime; (6) the statements revealed intimate familiarity with the manner in which the victim was killed; and (7) the witnesses saw the declarant and defendant in possession of the victim's property. *Id.* at 751-52. The court concluded that the declarant's *spontaneous, voluntary statements to friends* exposing him to criminal liability for capital murder were reliable and thus admissible against the defendant under Rule 803(24). *Id.* at 752.

10

In *Guidry*, the declarant told his girlfriend about the plans and subsequent commission of a murder for hire in which the defendant participated. 9 S.W.3d at 147. At defendant's trial, the state introduced the girlfriend's testimony recounting the declarant's version of events. Over the defendant's objection, the trial court admitted the girlfriend's testimony and the defendant was convicted of capital murder. *Id.* at 138, 147. The court of criminal appeals revisited the holding in *Dewberry* and added an important qualification to the admissibility of the statement against penal interest. The court recognized that, to be admissible, the statement had to be against the declarant's own penal interest, not merely against the defendant's penal interest. *Id.* at 149. Therefore, the *Guidry* court concluded that unless the statement inculpated the declarant *to the same degree* it inculpated the defendant, it was inadmissible. *Id.* Consequently, all of the declarant's spontaneous statements that pointed to the defendant as the sole or primary actor for criminal conduct were held to be inadmissible by the court.[7] *Id.* For example, although the declarant admitted to participating in the murder, he pointed to the defendant as the sole triggerman. The circumstances surrounding the declarant's statements indicated that he made them spontaneously, in a non-custodial setting, to his girlfriend—and yet they were not so *equally* against the declarant's and the defendant's interests as to be sufficiently reliable. *Id.* Although the declarant's statements exposed him to *potentially* equal criminal liability, his version of events could have given him a better plea bargaining position or generated greater jury sympathy. *Id.* In a capital murder case where the potential sentences—life imprisonment or death—are so disparate, there is strong motivation to gain even a marginal advantage over other criminal actors.

---

[7] The court affirmed the conviction because there was ample other evidence of the defendant's guilt, rendering the error harmless. *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999).

11

Although the court of criminal appeals has given us a framework for reviewing the admissibility of statements against penal interest under Rule 803(24), all three cases involve a spontaneous utterance. The court has yet to consider the admissibility of a confession made to law enforcement during custodial interrogation and offered against a defendant who is not the declarant. In deciding that question however, we will apply the principles announced in *Cofield*, *Guidry* and *Dewberry*.

### A. *Does the Flores Confession Meet the Self-Inculpatory Test?*

Applying these cases to the facts of the instant cause, we must first examine whether the confession tends to expose the declarant to criminal liability. *See Davis*, 872 S.W.2d at 747. A statement that is broadly self-inculpatory may nevertheless be inadmissible if it is blame shifting. *Cofield*, 891 S.W.2d at 956. Statements referring to "we," rather than "he," expose the declarant, as well as the defendant, to criminal liability. *Guidry*, 9 S.W.3d at 149; *Dewberry*, 4 S.W.3d at 751. However, even statements that expose the declarant to *potential* legal liability may be inadmissible if they incriminate the defendant to a greater degree. *Guidry*, 9 S.W.3d at 149.

Flores admits that he: (1) drove to the victims' house; (2) took possession of a gun he knew was an automatic; (3) entered the house; (4) entered the victims' bedroom; (5) fired three shots; and (6) fled the scene. These admissions clearly expose Flores to some criminal liability. However, read in its entirety, Flores's statement is less a "confession" than an attempt to shift blame to the appellant as the primary criminal actor. Flores qualifies each of the admissions enumerated above and minimizes his own culpability. According to Flores, when appellant woke him and asked him for a ride, Flores did not know where they were going or for what purpose. Flores drove to the

12

victims' house, took possession of the gun and entered the house only under appellant's direction. Flores states that he fired only three shots, which is inconsistent with the expert testimony that one gun was fired eight times and the other eleven times. Flores implies that the victims were fatally wounded by appellant before he entered the garage and that he did not aim at the victims, but only "covered the room," apparently to facilitate their getaway. Flores credits appellant *alone* with planning the murders, providing the weapons and means of transportation, having a motive, firing the initial shots at the two sleeping victims, driving the car upon flight, and concealing evidence. Portions of Flores's statement are *clearly* not self-inculpatory but rather directly incriminate appellant.

### B. *Particularized Guarantees of Trustworthiness*

Next we will examine the record for corroborating circumstances that "clearly indicate the trustworthiness of the statement." *Davis*, 872 S.W.2d at 747-48. There is no bright line test of trustworthiness. The court of criminal appeals has identified several factors to be considered: (1) whether guilt of the declarant is inconsistent with guilt of the defendant; (2) whether the declarant was so situated that he might have committed the crime; (3) the timing of the declaration; (4) the spontaneity of the declaration; (5) the relationship between the declarant and the party to whom the statement is made; and (6) the existence of independent corroborative facts. *Dewberry*, 4 S.W.3d at 751.

Flores's confession was made at the Austin police station, during a custodial interrogation on October 2, 1997—approximately thirty-three hours after the murders. The confession initially recites that Flores was fully informed of his rights as follows:

1. I have the right to remain silent and not make any statement at all, and that any statement I do make may be used against me at my trial;

2. Any statement I make may be used against me in court;

3. I have the right to have a lawyer present to advise me prior to and during any questioning;

4. If I am unable to employ a lawyer, I have the right to have a lawyer appointed to advise me prior to and during any questioning;

5. I have the right to terminate this interview at any time.

The confession was given to two officers in the APD homicide unit. The typed confession recites that Flores could read, but "not very well," and that the confession was read back to him by a third officer. Flores was aware that appellant, Frizzell, and Gonzalez were also being questioned separately by the police officers. According to Flores's confession, he had admitted his participation in the murders to Frizzell. Therefore, Flores knew that the police were interviewing at least one person who could implicate him in the crime. The setting and statutory warnings Flores received would impress anyone with the gravity of the situation. Rule 803(24) requires that the statement subject the declarant to criminal liability to such a degree that "a reasonable person in declarant's position would not have made the statement unless believing it to be true." Tex. R. Evid. 803(24). In Flores's position, a reasonable person might have many motives *other than truth* for making such a confession. A reasonable person might well have decided that he was already a murder suspect and that a self-inculpatory statement could be used to his advantage. There is nothing about the circumstances of Flores's confession that rebuts the presumption of inherent unreliability of a confession as it pertains to another criminal actor's culpability. *Cofield*, 891 S.W.2d at 956.

**C.** *Confessions*

Our courts have recognized that criminal confessions are of questionable value:

> We have learned the lesson of history, ancient and modern, that a system of criminal law enforcement which comes to depend on the 'confession' will, in the long run, be less reliable and more subject to abuses than a system which depends on extrinsic evidence independently secured through skillful investigation.

*Connor v. State*, 773 S.W.2d 13, 13-14 (Tex. Crim. App. 1989) (quoting *Escobedo v. Illinois*, 378 U.S. 478 (1964)).

Confessions of another that incriminate the defendant on trial, even though self-inculpatory to the declarant, are presumptively unreliable. *Lilly*, 527 U.S. at 131; *Bruton v. United States*, 391 U.S. 123, 136 (1968).[8] This presumption can be rebutted; however, it is unlikely when, as here, (1) the state is involved in the taking of the confession; (2) the confession involves past events; and (3) the confession has never been subjected to adversarial testing. *See Lilly*, 527 U.S. at 137. Custodial confessions are highly suspect for several reasons. The declarant knows that anything he says can be used against him in a court of law. However, by cooperating with the authorities, he may plea bargain for a lesser charge or lighter sentence, or escape prosecution

---

[8] In a joint trial involving two co-defendants, one defendant's confession was admitted with a limiting instruction to the jury that it could only be considered as evidence of that defendant's guilt and not as evidence of his co-defendant's guilt. *Bruton v. United States*, 391 U.S. 123, 124-25 (1968). The confessor did not testify and the Court held that the limiting instruction was not "an adequate substitute for [the co-defendant]'s constitutional right of cross-examination." *Id*. at 137. In the case before us, appellant did not even have the benefit of such a limiting instruction. To the contrary, the statement was admitted for the very purpose of proving appellant's guilt. Further, appellant did not have the opportunity to cross-examine the declarant or to challenge the voluntariness of the declarant's confession.

altogether.[9] For this reason, the declarant is highly motivated to minimize his own culpability. *See id.* at 131. Therefore, the non-self-inculpatory portions of a custodial confession cannot be considered reliable. *Id.* at 131-32. In addition, custodial confessions are often made in response to leading questions, which are generally prohibited on direct examination in a court proceeding. *See Lilly*, 527 U.S. at 139.

In contrast, statements are considered somewhat more trustworthy if made (1) spontaneously; (2) in a non-custodial setting; or (3) to a person who is not engaged in law enforcement. *See Dewberry*, 4 S.W.3d at 751-52. Whether a statement contains particularized guarantees of trustworthiness is determined by examining only the circumstances in which the statement was made. *See Lilly*, 527 U.S. at 137-38. Other corroborating evidence is no indication of the statement's reliability. *Id.* The court must find affirmative proof to rebut the presumption that the statement is unreliable. *Guidry*, 9 S.W.3d at 150.

An examination of the record leads us to conclude that the circumstances in which Flores's statement was made do not clearly indicate the trustworthiness of the statement for purposes of Rule 803(24). Flores's confession is presumptively unreliable. *See Lilly*, 527 U.S. at 131. It was made to police officers during a custodial interrogation. The State has not carried its burden of showing the confession to be trustworthy, nor has the state rebutted the presumption that Flores's confession was inherently unreliable. We hold, therefore, that the trial court erred in admitting it. We now turn to an examination of whether the admission of Flores's confession violated appellant's constitutional rights under the Confrontation Clause of the Sixth Amendment.

---

[9] For example, in this case Flores was offered use immunity at appellant's trial.

16

**The Sixth Amendment Right to Confront Witnesses**

The criminal defendant's right to confront witnesses is a "fundamental right" and is applicable to the States through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). This encompasses the right to cross-examination of witnesses, the "greatest legal engine ever invented for the discovery of truth." *Lilly*, 527 U.S. at 124 (quoting *California v. Green*, 399 U.S. at 158). In particular, an accomplice's confession "creates a special, and vital, need for cross-examination." *Gray v. Maryland*, 523 U.S. 185, 194 (1998).[10]

The right of cross-examination is subject to exception only when the court can ascertain that "adversarial testing would be expected to add little, if anything, to the statements' reliability." *Lilly*, 527 U.S. at 125. Abrogation of the criminal defendant's right to cross-examine witnesses is a denial of due process of law under the Fourteenth Amendment. *Pointer*, 380 U.S. at 405.

We have already determined that the State failed to rebut the presumption that Flores's statement is inherently unreliable as it pertains to appellant's culpability. Although Flores's confession is self-inculpatory, the portions of the confession that refer to the appellant are mainly self-serving and shift the blame to the appellant as the primary actor. Furthermore, the confession is internally inconsistent.[11] "[C]ertainly no one experienced in the trial of lawsuits, would deny the value

---

[10] In fact, the United States Supreme Court originally followed the rule excluding hearsay statements against penal interest, holding instead that under federal law only hearsay statements against pecuniary (and perhaps proprietary) interest were sufficiently reliable to be admitted against a defendant who was not the declarant. *Lilly*, 527 U.S. 129. Most states followed a similar rule until fairly recently. *Id*.

[11] For example, Flores stated alternatively that when he entered the victims' room (1) "Frank was on the bed but rolling off on to the floor," and (2) "Frank was the first one that set up, he had been asleep and he sat up and then started to turn." The first statement implies that the victim had

of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case." *Pointe*r, 380 U.S. at 404 (citation omitted). Without an opportunity for cross-examination, appellant was unable to challenge Flores's veracity and call the jury's attention to the weaknesses and inconsistencies in his confession. There were no witnesses, other than appellant, available to counter Flores's version of events.[12] Therefore, we hold that the introduction of Flores's statement was a violation of appellant's Sixth Amendment right to confront and cross-examine the witnesses against him.

**Harm Analysis**

The admission of Flores's confession is a constitutional error that requires a harm analysis. *See Evans v. State*, 534 S.W.2d 707, 710-11 (Tex. Crim. App. 1976); *Muttoni v. State*, 25 S.W.3d 300, 308 (Tex. App.—Austin 2000, no pet.). In the case of constitutional error, a court of appeals must reverse a judgment of conviction unless it determines beyond a reasonable doubt that the error did not contribute to the conviction. Tex. R. App. P. 44.2(a); *Muttoni*, 25 S.W.3d at 308. If, without the erroneously admitted evidence, the record contains adequate evidence of guilt, then the error is harmless beyond a reasonable doubt. *See Guidry*, 9 S.W.3d at 152.

---

been shot by appellant, perhaps fatally, before Flores entered the room. The second statement implies that the victim awakened, and thus was alive, when Flores entered the room. Through cross-examination appellant could have challenged these statements and the inference that appellant fired the fatal shots.

[12] The error in admitting Flores's confession against appellant is compounded by the fact that this implicates appellant's constitutional right to remain silent under both the federal and state constitutions. *See* U.S. Const. amend. V; Tex. Const. art I, § 10. *Cf. Nowlin v. State*, 507 S.W.2d 534, 536 (Tex. Crim. App. 1974).

At trial, the State presented considerable circumstantial evidence linking appellant to the crime. However, only Flores alleged that appellant planned the murders, provided the weapons, entered the victims' house, and fired a gun.[13] There was no other testimony corroborating those accusations. Furthermore, the neighbors' testimony placing appellant at the scene was subject to cross-examination. Through cross-examination, appellant was able to point out discrepancies between the statements the two neighbors made to police on the day of the murders. He was also able to elicit the neighbors' earliest descriptions of the two suspects, which in some details did not accurately describe Flores and appellant. Appellant's expert testified to the unreliability of eyewitness identification of strangers whom one has seen only fleetingly and under stressful circumstances. In contrast, Flores's confession unequivocally identified appellant as the primary actor and, although presumptively unreliable, was clearly the most persuasive evidence of appellant's guilt presented to a lay jury. Therefore, we conclude that the introduction of Flores's confession was harmful to appellant and requires reversal. Our task remaining is to determine whether to remand this case for a new trial or render a judgment of acquittal. To answer this question, we review the legal sufficiency of the evidence.

---

[13] Again we note that without an opportunity to cross-examine Flores, appellant could rebut Flores's confession only by testifying. The Fifth Amendment provides that a criminal defendant cannot be compelled to testify as "a witness against himself." U.S. Const. amend V; *see also* Tex. Const. art. I, §10.

**Legal Sufficiency of the Evidence**

The appellant's second point of error is that without Flores's confession, the evidence was legally insufficient to support a conviction.[14] In reviewing the legal sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *accord Patrick v. State*, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); *Staley v. State*, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994). For this review, we must consider *all* the evidence in the record, admissible and inadmissible. *Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999); *Dewberry*, 4 S.W.3d at 740; *Johnson v. State*, 967 S.W.2d 410, 412 (Tex. Crim. App. 1998). If this Court finds that no rational trier of fact could find beyond a reasonable doubt that the appellant is guilty, then we must reverse the conviction and render a judgement of acquittal. *See Muttoni*, 25 S.W.3d at 308-09 (citing *Burks v. United States*, 437 U.S. 1, 17-18 (1978); *Greene v. Massey*, 437 U.S. 19, 24 (1978)).

Apart from Flores's confession, the State presented circumstantial evidence in its effort to prove the elements of the charged offense. The testimony of the neighbor who identified appellant in a line-up, along with the neighbor who saw two men flee the scene in a vehicle similar to appellant's, even though challenged, placed appellant at the scene of the crime. Gonzales testified that the two victims had stolen drugs and money from appellant, which provides appellant with a

---

[14] Appellant also challenges the factual sufficiency of the evidence. Because we have already determined that reversal is warranted, appellant will receive at least the relief of a new trial which he seeks under this point of error. Therefore, an examination of the factual sufficiency of the evidence would be redundant.

motive. Gonzales also testified that appellant and Flores were acting nervous on the day of the murders and appeared very interested in the news account of the murders. Appellant's Blazer was found hidden in another part of the city, which could be interpreted as an attempt by appellant to hide evidence of his guilt. This evidence, even without Flores's confession, is sufficient for a trier of fact to have found appellant guilty beyond a reasonable doubt. Additionally, applying the *Dewberry* standard and considering Flores's inadmissible confession, supplies abundant evidence of appellant's guilt. Therefore, in viewing the evidence in the light most favorable to the State, the evidence was legally sufficient to sustain the jury's verdict of guilt. Appellant's second point of error is overruled.

## CONCLUSION

Despite holding that the evidence presented at trial was legally sufficient for a finding of guilt beyond a reasonable doubt, we reverse and remand based on our holding that the admission of Flores's confession was a constitutional error which was harmful to the appellant. We remand to the trial court for a new trial.

_____

-

Mack Kidd, Justice

Before Justices Kidd, Puryear and Dally[*]

Reversed and Remanded

Filed: September 13, 2001

Publish

21

*    Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).