Reversed and Remanded and Opinion filed August 24, 2004













Reversed and Remanded and Opinion filed August 24,
2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00282-CR

____________

 

BAHRAM MAHBOUB
JAHANIAN,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 183rd
District Court

Harris County,
Texas

Trial Court Cause No. 933,943

 



 

O P I N I O N








Appellant, Bahram Mahboub Jahanian, was
charged by indictment with engaging in organized criminal activity by committing
and conspiring to commit with others a theft of property valued over $1,500 but
less than $20,000.  See Tex. Pen. Code Ann. ' 71.02 (Vernon Supp. 2004).  The indictment also contained two enhancement
paragraphs alleging previous convictions for organized criminal activity and
felony theft.  Appellant entered a plea
of Anot guilty,@ but after
considering the evidence the jury found appellant guilty as charged in the
indictment.  Thereafter, appellant
entered a plea of Atrue@ to the
enhancement allegations, and the trial court assessed his punishment at
confinement in the state penitentiary for a term of thirty-five years.

The record reflects that appellant acted
in a combination with his wife, Cindy Jahanian, his son, Nicholas Jahanian, his
brother, Bahman Jahanian, and Robin Growden, to perpetrate a theft on a Sam=s Club store.  Appellant=s scheme involved
the use of altered universal product code (AUPC@) labels.  Namely, appellant printed new UPC labels on
adhesive paper.  When scanned by the store=s computer, the
new UPC label would reflect a sales price significantly lower than the actual
price.  The plan required the use of at
least two different people.  The first
actor would enter the store and place a new UPC label on a particular item,
covering the original UPC label in the process. 
The first actor would then contact a second actor, giving instructions
on where to find the newly marked item. 
The second actor would then enter the store, locate the item with the
UPC label, and attempt to purchase the same.

The State offered evidence of two specific
instances of theft.  The first occurred
on March 25, 2002.  On that day,  Robin Growden and Krystal Jahanian, appellant=s daughter,
entered a Sam=s Club store near the intersection of
Highway 249 and F.M. 1960.  The women
purchased a Bose stereo and proceeded toward the exit.  However, all customers leaving a Sam=s Club store must
first pass by a Sam=s Club Agreeter@ who inspects each
shopping cart and compares the merchandise in the cart with the customer=s sales
receipt.  Ms. Faye Washington, who was
assigned to the optical department, was conversing with the Sam=s Club greeter,
when Robin Growden and Krystal Jahanian approached the exit.  The greeter inspected Growden=s receipt which
reflected the sale of one item for $79.98. 
The only item in their shopping cart was a Bose stereo which Ms.
Washington knew was actually $999.98. 
Ms. Washington
informed the greeter, as well as Robin Growden and Krystal Jahanian, that the
price of the stereo was not $79.98. 
Without saying a word, Krystal Jahanian walked out of the store.








Now alone, 
Robin Growden said, AWell, just give me
my money back.  I don=t want it.@  Ms. Washington and the Sam=s greeter directed
Growden to the service desk while they summoned a Harris County Sheriff=s Deputy who was
providing security at the store.

Deputy Jeffrey Easthagen and Ms. Washington examined the
stereo box and quickly discovered that a fake UPC label had been placed over
the actual UPC label.  Growden initially
told Deputy Easthagan her name was Katie Nicole Beard, which was the name on
her Sam=s Club membership
card.[1]  However, Deputy Easthagen was unable to
verify any person by that name through a search of law enforcement
databases.  Growden finally gave her real
name, Robin Nicole Growden.  Now detained
as part of a theft investigation, Deputy Easthagen read Growden her Miranda
rights.  Growden agreed to give a written
statement.  The statement reads as
follows:

At about 4:30 p.m. BJ Jahanian
called Krystal Jahanian and asked her and I to pick up a bose from sams [sic]
off of 249 and 1960.  She said okay, at
this time we were unaware of the price adjustment.  When the cashier rung it up, we were shocked
and paid the amount and tried to leave. 
We were stopped at the door and I stayed.  Krystal went to go get the car so here I am
now.  I knew I wasn=t going to pay 1,000 dollars for
it, but I wasn=t sure how much.  I don=t know who put the sticker on it or when.  I=m not even sure where or how it was made.  But I was asked to purchase it.  I was told it was the one on the top, left
hand corner.  After that he asked me to
call him.  I have a Sam=s card under a different name, but
I personally haven=t used it until today.  I got it by coming in and filling out a piece
of paper a couple of weeks ago.  My ID
was never asked for.  Then I gave it to
him and haven=t seen it till today.  

/s/ Robin Growden

3-25-02








Another incident occurred the following
day on March 26, 2002.  On that day,
appellant telephoned Carroll Barber and told him they had some Awork@ to do.  Barber testified that the term Awork@ was, in this instance,
a euphemism for engaging in an organized theft of merchandise.  Nicholas, appellant=s son, came by
Barber=s home, picked him
up, and took him to appellant=s house.  The three of men then drove to a Sam=s Club store.  Appellant gave Barber a cell phone,
approximately $130 in cash, and instructed him to remain in the vehicle while
he and Nicholas went into the store.  In
a subsequent cell phone conversation, Barber was instructed to enter the store
and buy a particular computer.  Barber
was told where the computer was located within the store and the last few
digits on the UPC label so he would select the Acorrect@ computer to
purchase.

Barber entered the store and had no
difficulty locating the Acorrect@ computer.  Barber took the computer to the cashier where
she rang up the sale.  The actual price
of the computer was $1,300, but due to the fake UPC code, the  price paid by Barber was less than one tenth
the true price of the product.  As Barber
attempted to leave the store, he was confronted by several security
officers.  The security officers informed
Barber that he had not paid the correct price for the computer.  They escorted him to a small office and began
interrogating Barber regarding his knowledge of the scheme.  Initially, Barber feigned ignorance of the
scheme and pretended to be an innocent customer.

During the interrogation, Barber=s problems were
compounded when appellant called several times on his cell phone trying to
determine what was happening.  Being
surrounded by security officers, Barber pretended the calls were from his
wife.  Eventually, however, Barber
admitted his participation in the theft ring, but he told investigators he did
not know who put the UPC label on the box. 
Barber was arrested and taken to jail.








Barber, who was on probation at the time
of his arrest, cooperated with police. 
In exchange for his assistance, Barber was only charged with felony
theft and received two years= deferred
adjudication.  In addition to testifying
at appellant=s trial, Barber gave a video-taped
statement to the police explaining how the scheme worked, who was involved, and
his role in the scheme.

In his first issue for review, appellant
contends his Sixth Amendment right to confrontation and cross-examination were
abridged by the admission of Growden=s written
statement.  Growden did not testify at
trial, and law enforcement officials have been unable to locate her.  The State attempted to introduce Growden=s statement through
Deputy Easthagen.  Appellant, however,
moved to suppress Growden=s statement and a hearing was held on his
motion.  At the hearing, appellant argued
that the admission of Growden=s statement
violated his Sixth Amendment right to confrontation.  In response, the State argued that the
statement was excepted from the Hearsay Rule under Rule 803(24) as a Statement
Against Interest.  Appellant responded
that Growden=s statement violated the Confrontation
Clause of the Sixth Amendment without regard to whether it satisfied an
exception to the Hearsay Rule.  The trial
court overruled appellant=s objection.

The Sixth Amendment provides, in pertinent
part, that in Aall criminal prosecutions, the accused
shall enjoy the right . . . to be confronted with the witnesses against him.@  While the Rules of Evidence permit exceptions
to the normal prohibition against hearsay evidence, these exceptions do not
apply to evidence that is testimonial in nature.  The Constitution simply does not permit the
admission of a testimonial statement of a witness who did not appear at trial
unless he was unavailable to testify and the defendant had a prior opportunity
for cross‑examination.  Crawford
v. Washington, 124 S.Ct. 1354, 1365 (2004). 
Certainly, Growden=s written statement, given to police
during a criminal investigation, after she had become a suspect, was
testimonial in nature.  Id. at
1374.  Accordingly, the trial court erred
in permitting Growden=s statement into evidence.








Because the error presented here is of
constitutional magnitude, we must reverse the conviction unless we determine Abeyond a
reasonable doubt that the error did not contribute to the conviction or
punishment.@  Tex. R. App. P. 44.2(a).  Here, the State alleged in its indictment
that appellant participated in a combination consisting of Bahram Mahboub
Jahanian, Cindy Jahanian, Nicholas Jahanian, Bahman Jahanian, and Robin
Growden.  However, in proving the
existence of a combination, the State need not demonstrate the participation of
all alleged members of the combination; 
the State need only prove the participation of at least three of the
named members of the combinationCincluding the
defendant.  Rodriguez v. State, 90
S.W.3d 340, 354 (Tex. App.CEl Paso 2001, pet.
ref=d); Crum v.
State, 946 S.W.2d 349, 356 (Tex. App.CHouston [14th
Dist.] 1997, pet. ref=d). 


Carroll Barber provided testimony that
links appellant and his son, Nicholas, to the combination.  Faye Washington and Deputy Easthagen provided
testimony that Growden participated in a theft under strikingly similar
circumstances.  Moreover, the State
introduced circumstantial evidence showing a connection between Growden and
appellant, namely, Growden was observed by police at appellant=s home.  Further, when police executed a search warrant
at appellant=s home on March 27, 2002, they discovered
computers, printing equipment, fraudulent store receipts, fraudulent UPC
labels, shredding equipment, and other merchandise.  Police also recovered a sales receipt from
Sam=s for $79 made out
to Katie Beard, a name used by Growden, and a fraudulent Wyoming driver=s license bearing
the name Kimberly Denise Hawkins and Growden=s picture.








While such evidence may well be sufficient
to satisfy the State=s burden of proof, we must not focus
merely on the propriety of the outcome of the trial, but the integrity of the
process that led to the conviction and punishment.  Harris v. State, 790 S.W.2d 568, 587
(Tex. Crim. App. 1989).   Accordingly, we
must determine the error=s probable impact on the jury=s verdict.  Id. 
Here, the State=s only direct evidence of collaboration
between Growden and appellant is found in her written statement.  Arguably, Growden=s statement is the
most persuasive evidence of appellant=s connection to
Growden.  See Mendez v. State, 56 S.W.3d 880, 893 (Tex. App.CAustin 2001, no pet.) (evaluating the
effect of the admission of a co-actor=s statement
identifying appellant as the primary actor when the remainder of the State=s case rested upon
circumstantial evidence).  Under the
circumstances presented here, we cannot say beyond a reasonable doubt that
Growden=s statement did
not contribute to appellant=s conviction.

Accordingly, we sustain appellant=s first point of
error.  Finding the admission of Growden=s statement was
harmful error, we need not address appellant=s remaining
issues.  The judgment of the trial court
is reversed, and the cause is remanded for a new trial.

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion filed August 24, 2004.

Panel
consists of Justices Anderson, Hudson, and Draughn.*

Publish
C Tex. R. App. P. 47.2(b).











[1]  Sam=s Club is a large volume retailer that requires
customers to become Amembers.@  Carroll Barber, an accomplice witness, explained
that he received Sam=s Club identification cards under false names with
novelty driver=s licences that he obtained at appellant=s insistence.  





*  Former Justice
Joe L. Draughn sitting by assignment.