**Bahram Mahboub JAHANIAN, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–03–00282–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 24, 2004.

Stanley G. Schneider, Houston, for appellants.

Shirley Cornelius, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and DRAUGHN.*

* Former Justice Joe L. Draughn sitting by assignment.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Bahram Mahboub Jahanian, was charged by indictment with engaging in organized criminal activity by committing and conspiring to commit with others a theft of property valued over $1,500 but less than $20,000. *See* Tex. Pen.Code Ann. § 71.02 (Vernon Supp.2004). The indictment also contained two enhancement paragraphs alleging previous convictions for organized criminal activity and felony theft. Appellant entered a plea of "not guilty," but after considering the evidence the jury found appellant guilty as charged in the indictment. Thereafter, appellant entered a plea of "true" to the enhancement allegations, and the trial court assessed his punishment at confinement in the state penitentiary for a term of thirty-five years.

The record reflects that appellant acted in a combination with his wife, Cindy Jahanian, his son, Nicholas Jahanian, his brother, Bahman Jahanian, and Robin Growden, to perpetrate a theft on a Sam's Club store. Appellant's scheme involved the use of altered universal product code ("UPC") labels. Namely, appellant printed new UPC labels on adhesive paper. When scanned by the store's computer, the new UPC label would reflect a sales price significantly lower than the actual price. The plan required the use of at least two different people. The first actor would enter the store and place a new UPC label on a particular item, covering the original UPC label in the process. The first actor would then contact a second actor, giving instructions on where to find the newly marked item. The second actor would then enter the store, locate the item with the UPC label, and attempt to purchase the same.

The State offered evidence of two specific instances of theft. The first occurred on March 25, 2002. On that day, Robin Growden and Krystal Jahanian, appellant's daughter, entered a Sam's Club store near the intersection of Highway 249 and F.M. 1960. The women purchased a Bose stereo and proceeded toward the exit. However, all customers leaving a Sam's Club store must first pass by a Sam's Club "greeter" who inspects each shopping cart and compares the merchandise in the cart with the customer's sales receipt. Ms. Faye Washington, who was assigned to the optical department, was conversing with the Sam's Club greeter, when Robin Growden and Krystal Jahanian approached the exit. The greeter inspected Growden's receipt which reflected the sale of one item for $79.98. The only item in their shopping cart was a Bose stereo which Ms. Washington knew was actually $999.98. Ms. Washington informed the greeter, as well as Robin Growden and Krystal Jahanian, that the price of the stereo was *not* $79.98. Without saying a word, Krystal Jahanian walked out of the store.

Now alone, Robin Growden said, "Well, just give me my money back. I don't want it." Ms. Washington and the Sam's greeter directed Growden to the service desk while they summoned a Harris County Sheriff's Deputy who was providing security at the store.

Deputy Jeffrey Easthagen and Ms. Washington examined the stereo box and quickly discovered that a fake UPC label had been placed over the actual UPC label. Growden initially told Deputy Easthagen her name was Katie Nicole Beard, which was the name on her Sam's Club membership card.[1] However, Deputy Easthagen

---

1. Sam's Club is a large volume retailer that requires customers to become "members." Carroll Barber, an accomplice witness, explained that he received Sam's Club identifi-

was unable to verify any person by that name through a search of law enforcement databases. Growden finally gave her real name, Robin Nicole Growden. Now detained as part of a theft investigation, Deputy Easthagen read Growden her Miranda rights. Growden agreed to give a written statement. The statement reads as follows:

> At about 4:30 p.m. BJ Jahanian called Krystal Jahanian and asked her and I to pick up a bose from sams [sic] off of 249 and 1960. She said okay, at this time we were unaware of the price adjustment. When the cashier rung it up, we were shocked and paid the amount and tried to leave. We were stopped at the door and I stayed. Krystal went to go get the car so here I am now. I knew I wasn't going to pay 1,000 dollars for it, but I wasn't sure how much. I don't know who put the sticker on it or when. I'm not even sure where or how it was made. But I was asked to purchase it. I was told it was the one on the top, left hand corner. After that he asked me to call him. I have a Sam's card under a different name, but I personally haven't used it until today. I got it by coming in and filling out a piece of paper a couple of weeks ago. My ID was never asked for. Then I gave it to him and haven't seen it till today.
>
> /s/ Robin Growden
>
> 3–25–02

Another incident occurred the following day on March 26, 2002. On that day, appellant telephoned Carroll Barber and told him they had some "work" to do. Barber testified that the term "work" was, in this instance, a euphemism for engaging in an organized theft of merchandise. Nicholas, appellant's son, came by Bar-

ber's home, picked him up, and took him to appellant's house. The three men then drove to a Sam's Club store. Appellant gave Barber a cell phone and approximately $130 in cash, and instructed him to remain in the vehicle while he and Nicholas went into the store. In a subsequent cell phone conversation, Barber was instructed to enter the store and buy a particular computer. Barber was told where the computer was located within the store and the last few digits on the UPC label so he would select the "correct" computer to purchase.

Barber entered the store and had no difficulty locating the "correct" computer. Barber took the computer to the cashier where she rang up the sale. The actual price of the computer was $1,300, but due to the fake UPC code, the price paid by Barber was less than one tenth the true price of the product. As Barber attempted to leave the store, he was confronted by several security officers. The security officers informed Barber that he had not paid the correct price for the computer. They escorted him to a small office and began interrogating Barber regarding his knowledge of the scheme. Initially, Barber feigned ignorance of the scheme and pretended to be an innocent customer.

During the interrogation, Barber's problems were compounded when appellant called several times on his cell phone trying to determine what was happening. Being surrounded by security officers, Barber pretended the calls were from his wife. Eventually, however, Barber admitted his participation in the theft ring, but he told investigators he did not know who put the UPC label on the box. Barber was arrested and taken to jail.

cation cards under false names with novelty driver's licenses that he obtained at appel-

lant's insistence.

Barber, who was on probation at the time of his arrest, cooperated with police. In exchange for his assistance, Barber was only charged with felony theft and received two years' deferred adjudication. In addition to testifying at appellant's trial, Barber gave a video-taped statement to the police explaining how the scheme worked, who was involved, and his role in the scheme.

■ In his first issue for review, appellant contends his Sixth Amendment right to confrontation and cross-examination were abridged by the admission of Growden's written statement. Growden did not testify at trial, and law enforcement officials have been unable to locate her. The State attempted to introduce Growden's statement through Deputy Easthagen. Appellant, however, moved to suppress Growden's statement and a hearing was held on his motion. At the hearing, appellant argued that the admission of Growden's statement violated his Sixth Amendment right to confrontation. In response, the State argued that the statement was excepted from the Hearsay Rule under Rule 803(24) as a Statement Against Interest. Appellant responded that Growden's statement violated the Confrontation Clause of the Sixth Amendment without regard to whether it satisfied an exception to the Hearsay Rule. The trial court overruled appellant's objection.

■ The Sixth Amendment provides, in pertinent part, that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." While the Rules of Evidence permit exceptions to the normal prohibition against hearsay evidence, these exceptions do not apply to evidence that is testimonial in nature. The Constitution simply does not permit the admission of a testimonial statement of a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, ——, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004). Certainly, Growden's written statement, given to police during a criminal investigation, after she had become a suspect, was testimonial in nature. *Id.* at 1374. Accordingly, the trial court erred in permitting Growden's statement into evidence.

■ Because the error presented here is of constitutional magnitude, we must reverse the conviction unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX.R.APP. P. 44.2(a). Here, the State alleged in its indictment that appellant participated in a combination consisting of Bahram Mahboub Jahanian, Cindy Jahanian, Nicholas Jahanian, Bahman Jahanian, and Robin Growden. However, in proving the existence of a combination, the State need not demonstrate the participation of all alleged members of the combination; the State need only prove the participation of at least three of the named members of the combination — including the defendant. *Rodriguez v. State*, 90 S.W.3d 340, 354 (Tex. App.-El Paso 2001, pet. ref'd); *Crum v. State*, 946 S.W.2d 349, 356 (Tex.App.-Houston [14th Dist.] 1997, pet. ref'd).

Carroll Barber provided testimony that links appellant and his son, Nicholas, to the combination. Faye Washington and Deputy Easthagen provided testimony that Growden participated in a theft under strikingly similar circumstances. Moreover, the State introduced circumstantial evidence showing a connection between Growden and appellant, namely, Growden was observed by police at appellant's home. Further, when police executed a search warrant at appellant's home on March 27, 2002, they discovered comput-

ers, printing equipment, fraudulent store receipts, fraudulent UPC labels, shredding equipment, and other merchandise. Police also recovered a sales receipt from Sam's for $79 made out to Katie Beard, a name used by Growden, and a fraudulent Wyoming driver's license bearing the name Kimberly Denise Hawkins and Growden's picture.

While such evidence may well be sufficient to satisfy the State's burden of proof, we must not focus merely on the propriety of the outcome of the trial, but the integrity of the process that led to the conviction and punishment. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App. 1989). Accordingly, we must determine the error's probable impact on the jury's verdict. *Id.* Here, the State's only direct evidence of collaboration between Growden and appellant is found in her written statement. Arguably, Growden's statement is the most persuasive evidence of appellant's connection to Growden. *See Mendez v. State,* 56 S.W.3d 880, 893 (Tex.App.-Austin 2001, no pet.) (evaluating the effect of the admission of a co-actor's statement identifying appellant as the primary actor when the remainder of the State's case rested upon circumstantial evidence). Under the circumstances presented here, we cannot say beyond a reasonable doubt that Growden's statement did not contribute to appellant's conviction.

Accordingly, we sustain appellant's first point of error. Finding the admission of Growden's statement was harmful error, we need not address appellant's remaining issues. The judgment of the trial court is reversed, and the cause is remanded for a new trial.