Opinion issued May 19, 2005








     







In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01223-CR




WILLIE ALLEN CLAY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Cause No. 953336




O P I N I O N

          A jury found appellant, Willie Allen Clay, guilty of aggravated robbery and
assessed punishment at 60 years’ confinement and a $10,000 fine. In one issue,
appellant contends that the trial court’s admission into evidence of his accomplices’
statements to police violated his Sixth Amendment right to confrontation. Since
appellant’s trial, the United States Supreme Court held in Washington v. Crawford
that testimonial statements, such as the ones at issue in this case, are inadmissible.
Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004). The trial
court did not have the benefit of Crawford when it, under the applicable law at that
time, properly admitted the statements into evidence. Nevertheless, the admission of
the statements was error. Because we cannot conclude beyond a reasonable doubt
that the admission of the accomplices’ statements did not contribute to the jury’s
finding that appellant was guilty of aggravated robbery, we hold that the error in
admitting the statements was harmful error. For this reason, we reverse the judgment
of the trial court and remand for further proceedings.Background
          On June 22, 2003, Monica Duran, Marina Lopez, and several other friends
went to a bar where their friend, the complainant, Amber Trevino, worked as a
waitress. The group of friends left the bar at around 2:00 a.m. and returned to
Monica’s townhouse in a Montrose neighborhood of Houston. Amber remained at
the bar to clean up but planned to join her friends after work at Monica’s townhouse. 
          When they arrived, the group of friends parked across the street from the
townhouse. As they were parking, three men walked by the group’s vehicle. The
men watched the group as they parked. When the friends got out of the vehicle, the
three men, who were about 10 feet away, turned and faced them. Fearing the men,
the group hurried into the townhouse without incident. 
          Amber left work at around 3:00 a.m. and drove to join her friends. Amber
parked her car down the street from Monica’s townhouse. She got out of the car,
carrying her purse and a large Armani bag. As she walked toward Monica’s
townhouse, Amber felt someone running up behind her. As she turned, a man hit her
in the head with a nightstick. Two other men began kicking and hitting her with their
fists. The last two men then grabbed Amber’s bags and ran toward her car. The other
man, who had struck her first, stayed and continued to beat Amber with the
nightstick. He stopped hitting Amber only when a neighbor yelled, “Stop!” 
          As a result of the attack, Amber’s scalp was split open, requiring staples. She
also developed a blood clot in her leg from torn muscles due to the beating. The three
men stole her purse, her Armani bag, and her car. Three days after the attack, on June
26, 2003, the police spotted Amber’s Toyota Corolla going the wrong direction down
a one-way street. Larry Monroe was driving the car. Appellant and Chad Ivy were
passengers. Following a high-speed chase with police, the car hit a telephone pole. 
After the crash, the three men fled on foot from the vehicle but were apprehended
hiding nearby. Monroe was arrested for driving a stolen vehicle and fleeing from the
police. Ivy was arrested on an outstanding warrant. The police obtained
identification from appellant and then released him.
          Also on June 26, Amber identified appellant from a photo spread as the man
who had beaten her with the nightstick. She also identified Monroe and Ivy as the
other two participants in the robbery who took her bags. At trial, Amber again
identified appellant as the assailant who struck her with the nightstick. 
          Marina Lopez also identified Monroe and Ivy in separate lineups. At trial,
Marina identified appellant as one of the men that she saw on June 22, 2003, as she
and her friends arrived at Monica’s townhouse. 
          At trial, appellant contended that Amber’s and Marina’s identifications of him
were not reliable. In sum, the defense argued that the area in which the attack
occurred was poorly lit and that Amber did not have a sufficient opportunity to see
appellant’s face. The defense attacked Marina’s credibility because she admitted that
she had been drinking margaritas earlier that night. In response, the State elicited
testimony from Amber and Marina that each was certain of her identification of
appellant and that each had sufficient opportunity to see his face on the night of the
robbery.
          Sergeant John Clinton Jr. of the Houston Police Department testified for the
State as the investigating officer on the case. Outside the presence of the jury, the
State raised the issue of whether Sergeant Clinton could testify regarding statements
made to him by appellant’s accomplices, Monroe and Ivy, during custodial
interviews.


 The defense objected that admission of the statements would violate
appellant’s Sixth Amendment right to confrontation. The trial court ruled that it
would allow Sergeant Clinton to testify regarding Monroe’s and Ivy’s statements “as
far as planning a conspiracy to commit the offense.” The trial court stated that it
found such evidence to be “highly probative of the actual guilt or innocence of this
defendant, as far as these charges that are pending . . . .”
          Sergeant Clinton testified that he interviewed Monroe and Ivy separately.
According to Sergeant Clinton, Monroe described the events leading up to the
robbery during the interview. Monroe told Sergeant Clinton that, on the night of June
22, 2003, he, appellant, and Ivy planned to rob someone and steal that person’s
vehicle. Monroe also told Sergeant Clinton that he had found a nightstick in the
bushes and had given it to appellant that night. The trio then walked around the
Montrose neighborhood, where Amber was attacked, looking for a victim. Sergeant
Clinton stated that Monroe also placed himself at the scene of the robbery. 
          Sergeant Clinton testified that Ivy provided a similar account of the events and
corroborated Monroe’s statement. In this regard, Sergeant Clinton told the jury that
Ivy stated that he, Monroe, and appellant planned to rob someone and take the
person’s vehicle on the night in question. Sergeant Clinton indicated that Monroe
and Ivy each told him that they had acted on the plan to rob someone and steal a
vehicle.
          On recross-examination, the defense asked Sergeant Clinton whether Monroe’s
and Ivy’s statements were self-serving. Sergeant Clinton responded that the two men
downplayed their roles in the robbery. As part of this line of questioning, Sergeant
Clinton testified that one of the two men denied participating in the offense. Sergeant
Clinton also testified that Monroe and Ivy admitted to planning the robbery but
denied participating in “the actual beating” of Amber. 
          Following the defense’s questioning, the State asked to approach the bench.
The State asserted that the defense had “opened the door” to further questions about
Monroe’s and Ivy’s statements. The defense responded that it tried to question
Sergeant Clinton without “opening the door,” explaining that it was in a difficult
position due to its inability to cross-examine Monroe and Ivy. On the basis that the
defense’s questions arguably left the wrong impression of the facts with the jury, the
trial court ruled that the State could further question Sergeant Clinton about Monroe’s
and Ivy’s statements. Specifically, the trial court ruled that the State could question
Sergeant Clinton about whether Monroe and Ivy placed themselves and appellant at
the robbery scene, whether they all left in Amber’s car, and whether the three men
spent the three days following the robbery together until they were caught in Amber’s
vehicle.
          At that point, the following exchange occurred between the prosecutor and
Sergeant Clinton:
Q. Officer, when you questioned both Mr. Monroe and Mr. Ivy
independently, did Mr. Monroe put himself at the scene of Amber
Trevino’s robbery over on Hawthorne Street?
 
A. Yes, ma’am.
 
Q. Did he also indicate that Chad Ivy was there at Ms. Trevino’s
robbery?
A. Yes, ma’am.
Q. And did he also indicate that [appellant] was there at Ms. Trevino’s
robbery?
 
A. Yes, ma’am.
 
Q. And did Mr. Ivy indicate the same things, that the three of them,
[appellant], Mr. Monroe, and Mr. Ivy were all present over there on
Hawthorne Street at Ms. Trevino’s robbery?
 
A. Yes, ma’am.
 
Q. Did Mr. Monroe and Mr. Ivy also both indicate that they got in that
maroon Toyota Corolla, all three of them, and left the scene of that
robbery that night, June 26th [sic]?
 
A. Yes, ma’am.
 
Q. And did they indicate that they spent the next three days together, all
three of them?
A. Yes, ma’am.
          Appellant did not testify and the defense called no witnesses. The jury found
appellant guilty of aggravated robbery as charged in the indictment. 
Admission of Accomplices’ Testimonial Statements
          In one issue, appellant complains that the trial court erred by allowing Sergeant
Clinton to testify regarding Monroe’s and Ivy’s statements. As he did in the trial
court, appellant contends that the admission of the statements violated his right to
confrontation under the Sixth Amendment of the United States Constitution. 
          Since the time of appellant’s trial, the United States Supreme Court held in
Crawford v. Washington that, without exception, testimonial statements of witnesses
absent from trial are admissible over a Confrontation Clause objection only when (1)
the declarant is unavailable and (2) the defendant has had a prior opportunity to
cross-examine. 541 U.S. at 68, 124 S. Ct. at 1374. In this case, the State concedes
that Monroe’s and Ivy’s statements, obtained as a result of police interrogation, were
inadmissible under the newly crafted test enunciated in Crawford.


 Instead, the State
contends that the admission of the statements, through Sergeant Clinton’s testimony,
was harmless error.
          Because the Sixth Amendment right of confrontation is a fundamental right,
and because a violation of that right constitutes constitutional error, we must reverse
a trial court’s judgment when Confrontation Clause error is present, unless we can
determine beyond a reasonable doubt that the error did not contribute to the
conviction. See Tex. R. App. P. 44.2(a) (requiring reversal of constitutional error
unless appellate court determines beyond reasonable doubt that error did not
contribute to conviction); see also Evans v. State, 534 S.W.2d 707, 711 (Tex. Crim.
App. 1976) (concluding that error of admitting co-defendant’s statement was not
harmless beyond a reasonable doubt). If there is a reasonable likelihood that the error
materially affected the jury’s deliberations, then the error was not harmless beyond
a reasonable doubt. Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). 
          In making this determination, we do not focus on the propriety of the outcome
of the trial; rather, we “calculate, as nearly as possible, the probable impact of the
error on the jury in light of the other evidence.” McCarthy v. State, 65 S.W.3d 47, 55
(Tex. Crim. App. 2001). Though the presence of overwhelming evidence supporting
the finding in question can be a factor in the evaluation of harmless error, our analysis
is not whether the remaining, legally admitted evidence is sufficient to support the
conviction. See id. (quoting Satterwhite v. Texas, 486 U.S. 249, 258–59, 108 S. Ct.
1792, 1798 (1988)); see also Wesbrook, 29 S.W.3d at 119; Brooks v. State, 132
S.W.3d 702, 708 (Tex. App.—Dallas 2004, pet. ref’d). When assessing harm caused
by inability to confront, other non-exclusive factors include whether the unchallenged
testimony was cumulative, presence or absence of corroboration, and overall strength
of prosecution’s case. See Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct.
1431, 1438 (1986).
          In a nutshell, the question that we ask in conducting our harm analysis is
whether a reasonable possibility exists that the error, either alone or in context,
“moved the jury from a state of nonpersuasion to one of persuasion as to the issue in
question.” Wesbrook, 29 S.W.3d at 119. If we hold that an error is harmless, we are
“in essence asserting that the nature of the error is such that it could not have affected
the jury.” Id. 
          Here, the State contends that any error in the admission of Monroe’s and Ivy’s
statements was harmless because the evidence of appellant’s guilt is “overwhelming.”
Based on our review of the record, we disagree that the error in this case was
harmless.
          The charge in this case authorized the jury to convict appellant of aggravated
robbery as a principal or as a party to the offense. A person commits the offense of
robbery if, in the course of committing theft and with the intent to obtain or maintain
control of property, he intentionally or knowingly threatens or places another in fear
of imminent bodily injury or death. Tex. Pen. Code Ann. § 29.02 (Vernon 2003). 
A person commits the offense of aggravated robbery if he commits robbery and uses
or exhibits a deadly weapon. Id. § 29.03(a)(2) (Vernon 2003).
          Under the law of parties, a person is criminally responsible as a party to an
offense if the offense is committed by his own conduct, by the conduct of another for
which he is criminally responsible, or by both. Id. § 7.01(a)(2) (Vernon 2003). In
this case, the jury was instructed that a person is criminally responsible for an offense
committed by the conduct of another if, acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the
other person to commit the offense. Id.
          The State had the burden to prove appellant’s culpable mental state with regard
to the commission of aggravated robbery, regardless of whether the jury found
appellant guilty as a principal or as a party to the offense. In this respect, the State
had to prove that appellant hit appellant with a club with the intent of taking her
belongings or with the intent of aiding or assisting Monroe and/or Ivy in taking her
belongings. See id. §§ 7.02(a)(2); 29.02; see also Cooper, 67 S.W.3d at 222. 
Undeniably, circumstantial evidence was presented in this case from which the jury
could have reasonably inferred such intent. 
          Marina identified the three men that she saw near Monica’s townhouse as
appellant, Monroe, and Ivy. Another friend in the group, Monica Duran, testified that
she saw one of the three men carrying something that looked like a club, although she
did not look at their faces. According to Amber, appellant was the first to strike her
from behind with a “club.” Amber also testified that, while appellant repeatedly beat
her with the club, Monroe and Ivy took her bags and ran toward her car. The
evidence showed that Monroe, Ivy, and appellant were caught three days after the
robbery in Amber’s car. When the police tried to stop the car, Monroe led them on
a high-speed chase. After the car crashed, the three men ran from the car and fled on
foot. Appellant and Ivy hid and were tracked down by the police K-9 unit. Such
sequence of events is arguably sufficient to support the jury’s finding that appellant
intended to commit aggravated robbery. However, the question we must answer in
conducting our harm analysis is not whether the evidence is sufficient to support
appellant’s conviction. As noted by Justice Hudson in a post-Crawford case in which
the admission of a co-defendant’s statement was held to be harmful, “While such
evidence may well be sufficient to satisfy the State’s burden of proof, we must not
focus merely on the propriety of the outcome of the trial, but the integrity of the
process that led to the conviction and punishment.” Jahanian v. State, 145 S.W.3d
346, 351 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing Harris v. State, 790
S.W.2d 568, 587 (Tex. Crim. App. 1989)). 
          Intent can be inferred from the acts, words, and conduct of the accused. 
Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). Moreover, the
Court of Criminal Appeals has held that evidence showing that a theft occurs
immediately following an assault is sufficient to support an inference that the
defendant had an intent to commit robbery, even when the State does not offer other
evidence to show that the assault was committed with the intent of facilitating the
theft. Cooper, 67 S.W.3d at 225. However, as mentioned, we are not conducting a
sufficiency of the evidence review in this case. 
          Here, the State’s evidence showed that appellant was the first to strike Amber. 
Amber testified that Monroe and Ivy then began kicking and hitting her. She testified
that it was Monroe and Ivy who took her purse and Armani bag and then ran toward
her car. She also testified that, after Monroe and Ivy ran toward the car with her
belongings, appellant remained behind and continued to beat her with the nightstick
until a neighbor intervened. No direct evidence was presented that appellant took
Amber’s belongings or was ever in possession of them. When the three men were
caught on June 26, three days later, it was Monroe who was driving the car; appellant
was a passenger. Thus, while evidence of appellant’s acts constitute direct evidence
of an intent to assault Amber, they are only circumstantial evidence of his intent to
facilitate a robbery.
          This case is unique because direct evidence of a defendant’s state of mind is
rarely available. Intent is often inferred from conduct and from the cumulative effect
of the circumstantial evidence and the rational inferences drawn from that evidence. 
In this case, however, the jury was not required to make such rational inferences. 
Rather, Monroe’s and Ivy’s statements provided direct evidence that appellant
possessed the requisite intent to commit robbery as he struck Amber. 
          As discussed, Sergeant Clinton testified that Monroe and Ivy told him that they
and appellant planned to rob someone and steal that person’s car on June 22, 2003. 
The accomplices also told Sergeant Clinton that they walked around the
neighborhood where Amber was attacked looking for a victim to rob. The
accomplices stated that they had acted on their plan that night. Thus, Monroe’s and
Ivy’s statements constitute direct, unchallenged proof that appellant had the requisite
intent to commit aggravated robbery when he was beating Amber. No other direct
proof of appellant’s intent to rob Amber was offered in this case.
          Other portions of the confessions provided circumstantial evidence from which
the jury could infer that appellant struck Amber with the intent of facilitating the theft
of her belongings, rather than solely with the intent and purpose of assaulting Amber. 
In this regard, Sergeant Clinton testified that Monroe told him that he found and gave
a nightstick to appellant before the robbery occurred. Monroe and Ivy also told
Sergeant Clinton that they and appellant left the robbery scene in Amber’s car and
then spent the next three days together. This testimony also tends to show that
appellant acted with the intent of robbing Amber.


 No other admitted evidence
revealed these incriminating details. 
          Notably, Monroe’s and Ivy’s statements served to corroborate Amber’s
identification of appellant. Concomitantly, Amber’s testimony also served to
corroborate Monroe’s and Ivy’s statements. These two points are significant because
appellant’s primary defense at trial was that the eyewitness identification of appellant
was not reliable. Though Amber testified under direct examination that she was
certain that appellant was her assailant, the defense elicited testimony that arguably
called her identification into question. When evidence that corroborates the
unchallenged accomplice statement is itself subject to attack, the potential for harm
may be exacerbated. At that point, the accomplice statement gains strength from, and
gives support to, the challenged corroboratory evidence, thereby increasing the
perceived importance of the accomplice statements to the jury. See Mendez v. State,
56 S.W.3d 880, 893 (Tex. App.—Austin 2001, pet. ref’d) (concluding that co-defendant’s statement placing defendant at scene was most persuasive evidence of
such when the reliability of other testifying witness’s account given at trial was
undermined on cross-examination). 
          On cross-examination, Amber responded affirmatively that she was first struck
from behind. Amber acknowledged that, while being attacked, she “curled up into a
ball” and put her hands over her face to fend off the blows. The defense elicited
testimony from Amber that she worked two jobs and attended school, suggesting that
she may have been fatigued at the time of the 3:00 a.m. attack. The defense pointed
out that, while Amber unequivocally identified Monroe and Ivy in the lineups, she
told Sergeant Clinton that appellant “looked like” the man who hit her with the club
when she was shown the photo spread. Undoubtedly, Marina’s identification of
appellant as one of the men she saw an hour before the robbery lent credibility to
Amber’s identification. However, the defense attacked Marina’s credibility, as a
witness, by eliciting testimony that she had been drinking earlier that night.
          In contrast, Monroe’s and Ivy’s statements were not subject to cross-examination. The statements constituted unchallenged substantive evidence offered
to prove appellant’s guilt of aggravated robbery and to refute appellant’s defensive
theory that the witnesses’ identifications were not reliable. Significantly, the
statements are the only eyewitness evidence, besides Amber’s testimony, that placed
appellant at the scene during the offense. Monroe’s and Ivy’s confessions directly
implicate appellant in the offense and, although presumptively unreliable, were
persuasive evidence of appellant’s guilt presented to the jury. An accomplice
statement, offered without cross-examination, has the potential to be determinant
evidence when presented to a lay jury. The statement’s self-inculpatory nature lends
it credibility, while simultaneously overshadowing its often self-serving purpose. See
Muttoni v. State, 25 S.W.3d 300, 308 (Tex. App.—Austin 2000, no pet.) (noting
misleading and persuasive nature of co-defendant’s unchallenged eyewitness
testimony).
          Here, appellant had no opportunity to question Monroe’s and Ivy’s veracity,
to refute the accomplices’ accounts, to call attention to any possible inconsistencies
or discrepancies in the statements, or to delve into the co-defendants’ motivations for
confessing and implicating appellant. It is well-settled that harmless error analysis
for Confrontation Clause violations assumes that “the damaging potential of the
cross-examination [would have been] fully realized.” Van Arsdall, 475 U.S. at 684,
106 S. Ct. at 1438. Thus, it cannot be said that cross-examination of Monroe and Ivy
regarding their statements would have been of marginal utility. See Lilly v. Virginia,
527 U.S. 116, 136, 119 S. Ct. 1887, 1900 (1999).
          In sum, it is well-recognized that “[a] co-defendant’s statement that ‘expressly
implicate[s]’ a defendant is ‘powerfully incriminating.’” Brooks, 132 S.W.3d at 709
(quoting Richardson v. Marsh, 481 U.S. 200, 208, 107 S. Ct. 1702, 1707 (1987)). 
Monroe’s and Ivy’s unchallenged statements were certainly definitive and persuasive
evidence for purposes of establishing that appellant was the man who struck Amber
with the club and for purposes of showing that appellant acted with the requisite
culpable mental state to commit aggravated robbery. Indeed, when the trial court
determined that the accomplices’ statements could be admitted, it remarked that such
evidence was “highly probative of the actual guilt or innocence of this defendant. .
. . .” 
          In post-Crawford jurisprudence, courts have recognized that unchallenged
direct evidence from a criminal ally is more persuasive than challenged circumstantial
evidence from other more innocuous sources. See Jahanian, 145 S.W.3d at 351
(holding harmful error occurred when accomplice’s statement admitted because such
was direct evidence of an essential element to the offense and was more persuasive
than circumstantial evidence, even though circumstantial evidence was sufficient to
support conviction); Brooks, 132 S.W.3d at 711 (holding admission of co-defendant’s
statement harmful because statement was only direct proof of appellant’s culpable
mental state and active participation, prior to and during offense, and was “clearly”
more persuasive evidence than challenged circumstantial evidence, including
complainant’s eyewitness testimony that she saw defendant at crime scene); cf.
Bratton v. State, 156 S.W.3d 689, 695 (Tex. App.—Dallas 2005, no pet.) (holding
that error in admitting co-actors’ statements not harmful because cumulative of other
evidence admitted at trial). Moreover, accomplice testimony that is not subject to
cross-examination is powerful evidence to corroborate another witnesses’s
identification that has been called into question on cross-examination. See Samarron
v. State, 150 S.W.3d 701, 708 (Tex. App.—San Antonio 2004, pet. ref’d) (holding
error in admitting co-defendant’s statement harmful when statement served to
corroborate otherwise weak testimony of eyewitness at trial).
          Although an unintended consequence, the State’s closing argument also
demonstrates the importance of Monroe’s and Ivy’s statements to the prosecution in
this case. The State first stressed that, even if there was any doubt about Amber’s
identification of appellant, the jury could rely on the accomplices’ statements. In this
regard, the State argued, “[Y]ou know he’s the guy because you know that Larry and
Chad, the codefendants, also told you he was there, That [sic] they planned it. They
walked around and they were looking for someone to rob . . . .” Later in its
summation, the State again stressed the accomplice statements. The State reminded
the jury that it had ample evidence to convict appellant, including the evidence that
appellant was captured in Amber’s stolen Corolla and Amber’s and Marina’s
testimony identifying appellant. The State then emphasized, “And in addition to that,
you have what the codefendants said to the officers. That they were out there on the
corner, that they were looking for a victim and had been for hours.” In essence, the
State’s argument conveyed to the jury that, even if the other evidence was not enough
for them to convict appellant, the co-defendants’ statements served to tip the scales
in favor of a guilty finding. Thus, not only did the trial court believe that the
statements were “highly probative” of appellant’s guilt, the State’s argument suggests
that it did as well. 
          Though the State’s properly admitted evidence against appellant was strong
and could likely support a guilty finding, we do not agree that it was “overwhelming.” 
See Wesbrook, 29 S.W.3d at 119. Rather, Monroe’s and Ivy’s unchallenged
statements, which served to incriminate appellant and refute the defense’s theory of
eyewitness misidentification, was the most powerful and persuasive evidence offered
by the State. If we were to rule that the error of admitting Monroe’s and Ivy’s
statements was harmless, we would essentially be asserting that the nature of that
error is such that it could not have affected the jury in this case. See id. This we
cannot do. 
          Based on our review of the record, we conclude that a reasonable possibility
exists that the error in this case, either alone or in context, moved the jury from a state
of nonpersuasion to one of persuasion. See id. Monroe’s and Ivy’s statements were
unequivocal and had the potential to remove any doubt about appellant’s guilt in this
case. We conclude that there is a reasonable likelihood that the error materially
affected the jury’s deliberations. See id. We, therefore, cannot conclude beyond a
reasonable doubt that the admission of Monroe’s and Ivy’s statements did not
contribute to the jury’s guilty verdict for the offense of aggravated robbery. See Tex.
R. App. P. 44.2(a); Brooks, 132 S.W.3d at 711 (reaching same conclusion in
analogous case). 
Conclusion
          For the reasons discussed above, we hold that the admission of Monroe’s and
Ivy’s statements was harmful error and sustain appellant’s sole point of error. 
Accordingly, we reverse the judgment of the trial court and remand this cause for
further proceedings.




                                                                        Laura Carter Higley
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Higley and Bland.

Publish. Tex. R. App. P. 47.2(b).